Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4986 | **DATE** | November 5, 2004 |
| **CASE TITLE** | LORILLARD TOBACCO CO vs. S&M CENTRAL SERVICE CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry   Pursuant to Memorandum Opinion and Order entered this day, judgment is entered in favor of plaintiff and against defendant in the amount of $250,000.00 plus costs and attorneys' fees. The Clerk of Court is directed to release tthe $500.00 bond posted in this action plus interest to Martin Kedziora or Thomas Kost in a check payable to Greenberg Traurig, LLP.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | 11-8-04 | 68 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 11-5-04 | |
| | | | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORILLARD TOBACCO COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 4986 |
| | ) | |
| S&M CENTRAL SERVICE CORPORATION, | ) | |
| | ) | **DOCKETED** |
| Defendant. | ) | NOV 0 8 2004 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Lorillard Tobacco Co., ("Lorillard"), filed suit against defendant S&M Central Service Corporation, ("S&M"), alleging that S&M infringed of five of Lorillard's registered trademarks in violation of the Trademark Act of 1946, 15 U.S.C. § 1051 et seq., ("Lanham Act"), by willfully, or with willful blindness, offering for sale, selling and distributing counterfeit versions of Lorillard's Newport cigarettes. At the conclusion of a two day trial on the merits, a jury returned a verdict in favor of Lorillard and stated: (1) yes, consumers would likely confuse the cigarette packs bearing the counterfeit marks sold by S&M with genuine Newport cigarette packs; and (2) yes, S&M's actions were taken willfully or committed with willful blindness. (Dkt. No. 49.)

Lorillard's August 4, 2004 post-trial motions request this court to (1) award Lorillard statutory damages of five hundred thousand dollars, ($500,000)[1], pursuant to 15 U.S.C. § 1117(c); (2) award Lorillard costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b); (3) enter

---

[1] Lorillard arrived at the $500,000 figure by requesting damages of one hundred thousand dollars, ($100,000), for each of the five infringed trademarks.

1



a permanent injunction barring S&M from selling, offering for sale or distributing counterfeit cigarettes, and, (4) amend the pleadings to add Safwan Alkhawan ("Alkhawan") and Marwan Khawam ("Khawam") as individually liable defendants in order to conform the pleadings to the evidence presented at trial. Lorillard also submitted a motion on August 16, 2004 to Strike the Defendant's Brief on Damages pursuant to Rules 12, 26 and 37 of the Federal Rules of Civil Procedure, ("Rules").

S&M, in its Brief Regarding Damages of August 6, 2004, requests that if any damages are awarded, the court should award 15 U.S.C. § 1117(c)'s minimum amount of $500 per infringed mark for a total award of $2,500. S&M also argues that an award of attorneys' fees and costs is not appropriate in this case.

For the reasons set forth below, this court awards to Lorillard, pursuant to 15 U.S.C. § 1117(c), statutory damages of Fifty Thousand Dollars ($50,000) per infringed mark for a total statutory damage award of Two Hundred Fifty Thousand Dollars ($250,000). This court also finds that Lorillard is entitled to receive reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(b) but the parties must comply with the requirements of Local Rule 54.3 before this court can calculate a figure for reasonable costs and attorneys' fees. In addition, this court grants Lorillard's request for a permanent injunction, but denies Lorillard's Motion to Amend the Pleadings to Conform to the Evidence and denies Lorillard's August 16, 2004 Motion to Strike S&M's Brief on Damages.

## BACKGROUND

### A. Lorillard Tobacco Company

Lorillard is the fourth largest tobacco company in the United States. (Stipulation and

2

Statement of Uncontested Facts ¶ 4, Ex. 1 to the Pre-Trial Order, [hereinafter Uncontested Facts].) First introduced into the market in 1956, Newport is a Lorillard cigarette brand. (Id. at ¶ 6.) Newport is the leading brand of menthol cigarettes sold in the United States, and it is the second leading cigarette brand overall with an eight percent market share. (Id. at ¶ 6-7.)

Lorillard has protected the value of the Newport brand by registering the five following trademarks with the United States Patent and Trademark Office: Reg. No. 1,108,876; Reg. No. 1,178,413; Reg. No. 1,191,816; Reg. No. 1,920,066; and Reg. No. 2,600,870. (Id. at ¶ 10.) Four of the marks, Nos. 1,108,876; 1,178,417; 1,191,816; and 1,920,666, have attained incontestable status under 15 U.S.C. § 1115 (b). (Id.)

### B. S&M Central Service Corporation and its interaction with Lorillard

S&M operates a gas station in Chicago, Illinois. (Trial Tr. pg. 59.) The station sells gasoline, operates maintenance bays, and sells consumer products including food, magazines and cigarettes. (Uncontested Facts at ¶ 3.) Lorillard became aware of counterfeit Newport cigarettes at S&M when one of Lorillard's sales representatives made a sales call to S&M. (Id. at 16.) The sales representative purchased two cartons of the counterfeit cigarettes. (Trial Tr. at 42.) On July 18, 2003, Lorillard obtained an Ex Parte Seizure Order from this court authorizing a seizure of counterfeit cigarettes at S&M. The executed search of S&M resulted in a seizure of 83 cartons and 9 packages of counterfeit Newport cigarettes and associated business records.

## ANALYSIS

### A. Lorillard's Motion to Strike S&M's Brief on Damages

On August 16, 2004, Lorillard filed a motion to strike S&M's August 6, 2004 brief on damages under Rules 12, 26, and 37. Lorillard's motion asserts two separate concerns. First,

3

Lorillard argues that S&M's brief contains misstatement of facts unsupported by citation to the record. Second, Lorillard argues that S&M improperly included its 2001, 2002, and 2003 tax returns as an exhibit to S&M's brief on damages. Lorillard argues that it had requested financial information included tax returns from S&M during discovery, that S&M had failed to disclose these items, and therefore S&M should be prohibited from using these documents under Rule 37. Lorillard requests the court to strike S&M's brief in whole, or in the alternative strike specific offending portions of the brief, and the impose sanctions against S&M.

S&M counters that the documents provided with its brief were specifically requested by the court at the end of the trial, that these documents were not disclosed during discovery because they were not relevant and the information contained in the brief is appropriate since S&M is making arguments to the court. S&M further argues that Lorillard should be sanctioned for bringing its motion to strike.

Lorillard is unable to bring a motion to strike under Rule 12(f). Rule 12(f) provides that "the court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The plain language of Rule 12(f) states that the Rule applies to "pleadings." A memorandum submitted in support of a court's determination of damages is not a pleading under the Rules. See Fed. R. Civ. P. 7(a) (Defining pleadings as either a complaint, answer, reply to a counterclaim, an answer to a cross-claim, a third-party complaint, or third-party answer); see, e.g., E.E.O.C. v. Admiral Maint. Serv., L.P., 174 F.R.D. 643, 645-47 (N.D. Ill. 1997). Consequently, by the plain language of Rules, Rule 12(f) is not applicable. The court notes, however, that any evaluation of the facts must be based on the record presented to the court and the court will provide proper citations to the record were appropriate.

4

Furthermore, this court concludes that it will consider the tax returns provided by S&M in its brief on damages. The language of Rule 37(c) allows a court to consider evidence that otherwise would be excluded when the result is harmless. Fed. R. Civ. P. 37(c). In this case, the court concludes that S&M's decision to provide its 2001, 2003 and 2003 tax returns was harmless to Lorillard and actually undercuts certain of S&M's arguments due to the way that S&M uses the tax returns in its brief on damages.

S&M provides its tax returns as support for its statement that "S&M has not been a profitable enterprise. The attached tax returns of 2001, 2002, and 2003 show that there was no taxable income to the company. As a result, any award of damages would cause a hardship to the Defendant." (Def. Br. Regarding Damages of August 6, 2004 at 3.) However, the information contained in the tax returns contradict the statement that any award of damages would be a hardship. It is true that S&M reported zero taxable income on its 2001, 2002 and 2003 federal tax returns. However, the zero taxable figure was the result of a Net Operating Loss deduction, ("NOL"), that S&M was able to take during those three years. A NOL is a non cash deduction that allows a company to "carry-forward" and/or "carry-back" prior year losses and recognize them as current year deductions. See 26 U.S.C. § 172. Consequently, S&M's statement that it "has not been a profitable enterprise" may be technically correct for tax purposes since S&M reported no taxable income. However, the tax returns actually undermine S&M's statement that "any award of damages would cause a hardship for the Defendant" because S&M recognized a profit before the NOL deduction. S&M's creditability as to its statement of financial condition is further undermined by the millions of dollars of wire transfers uncovered by Lorillard. (Pls. Brief on Damages and Att'ys Fees of August 6, 2004 at Ex. I.) Since the tax returns submitted by S&M are actually harmful to S&M and helpful to

Lorillard, the court concludes there is no harm as to Lorillard and will deny Lorillard's motion to strike. In light of this decision, S&M's motion to sanction Lorillard for bringing its motion to strike is denied.

### B. Lorillard's Motion for Statutory Damages under 15 U.S.C. § 1117(c)

Title 15, Section 1117 allows a plaintiff to elect, at any time before final judgment is rendered, one of two alternative recovery options for trademark infringement: (1) the actual damages caused by the infringement, 15 U.S.C. § 1117(a); or (2) statutory damages. 15 U.S.C. § 1117(c). Congress provided the statutory damages option of 15 U.S.C. § 1117(c) through the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1368. This option was added due to the concern that a counterfeiter might hide, alter or destroy records, thus making it impossible for a plaintiff to determine the scope of, or be able to prove, actual damages. Louis Vuitton v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (citing S. Rep. No. 177, 104 Cong. (1995)).

Section 1117(c)(1) allows statutory damages of "not less than $500 and no more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). In addition, Section 1117(c)(2) allows a statutory award of up to $1,000,000 per counterfeit mark "if the court finds that the use of the counterfeit mark was willful." 15 U.S.C. § 1117(c)(2).

Although section 1117(c) contains the dollar ranges for possible statutory damage awards, the statute does not provides guidance on how to select a damage figure within statutory dollar range. Courts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). Sara Lee v. Bags of New

6

York, Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("Cases decided under the Copyright Act, which deals with a similar problem and a similar legislative grant to discretion, afford guidance here."). Accord, Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc., No. 1:00-CV-1934-BBM, 2003 WL 22331254, at *28 (N.D. Ga. May 9, 2003); Louis Vuitton, 211 F. Supp. 2d at 583; Microsoft Corp. v. Logical Choice Computers, Inc., No. 99 C 1300, 2001 WL 58950, at *11 (N.D. Ill. Jan. 22, 2001); Microsoft Corp. v. Software Wholesale Club, Inc., 129 F. Supp. 2d 995, 1008 (S.D. Tex. 2000).

The Seventh Circuit's standard for awarding copyright statutory damages under 17 U.S.C § 504(c), and thus the standard this court will use for awarding trademark statutory damages under 15 U.S.C. § 1117(c), is enumerated in Chi-Boy Music v. Charlie Club. 930 F.2d 1224, 1229 (7th Cir. 1991). Under the Chi-Boy standard, a court awarding statutory damages is "not required to follow any rigid formula but instead enjoys wide discretion." Id. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." Id. Additionally, statutory damages are appropriate to "penalize the infringer and deter future violations" when the infringement was willful. Id. at 1230.

Lorillard argues for a damages award of at least $100,000 per each of the five infringed marks for a minimum damage award of $500,000. Lorillard argues that the $500,000 is appropriate in light of (1) S&M's annual total gross sales of approximately $1.35 million, (2) S&M's annual total gross sales of cigarettes of $300,000, (3) the "immeasurable value" of Lorillard's trademarks and the risk that customers using inferior counterfeit cigarettes will stop buying Newport products, and, (4) will serve to deter both S&M and other potential infringers. (Pls. Brief on Damages and

Att'ys Fees of August 6, 2004 at pg 12-13, 18.) In addition, Lorillard argues that the court should reject any of the S&M's arguments about inability to pay a damages award. According to Lorillard, S&M's financial information should be "viewed with a healthy degree of skepticism," since they have failed to provide supporting documentation and Lorillard uncovered "millions of dollars worth of foreign wire transfers" made by S&M. (Id. at 13.)

Lorillard also argues for the court to find that S&M was willful in its infringement. A finding of willful infringement would allow for a damages award of up to $1,000,000 per counterfeit mark, 15 U.S.C. § 1117(c)(2), for a total potential award of $5,000,000. According to Lorillard, evidence of S&M's willfulness include (1) the purchase of larger than usual quantities of purported Newport cigarettes from Cam-Kat at a price well below market value and in unusual packaging that differed significantly from the genuine Newport packaging, and, (2) the jury's verdict finding willful infringement. (Id. at 15.) Additionally, Lorillard argues that S&M's attempts to rebut the question of willfulness merely highlight their own guilt," (Id.), and they have exacerbated their willful purchases of counterfeit Newports by "lying throughout this case - from the day of the ex parte seizure to the last day of trial." (Id. at 16.)

S&M argues the court should impose no damages or at the most the minimum statutory penalty of $500 per infringed mark for a total award of $2,500. S&M argues that (1) the conduct of defendants in other reported infringement cases is more willful and done with more disdain than in this case, and therefore warranted higher damages, (Defs. Brief Regarding Damages of August 6, 2004 at pg 2); (2) S&M has not been a profitable enterprise and therefore any damage award would cause a hardship, (Id.); (3) the actual damage to Lorillard was very small due to the small number of cartons of counterfeit product purchased, (Id. at 4.); (4) despite the jury's finding of willfulness,

8

the evidence for willfulness was not overwhelming, (Id.); (5) Lorillard shares some level of responsibility since it possessed specialized and sophisticated knowledge about how to identify counterfeit packages and never shared this information with S&M, (Id. at 5); and, (6) the court should not be bound by the jury's findings. (Id. at 6)

This court concludes that the appropriate damage award in this case is $50,000 per infringed mark for a total statutory damages award of $250,000. This amount is appropriate due to the value of the trademarks, the conduct by S&M, and the need to deter future conduct by S&M and other potential counterfeiters. Furthermore, this court notes that an award of $250,000 is reasonable and fair in light of the range of awards provided by other courts awarding damages under 15 U.S.C. § 1117(c)[2], and that the total potential award could have been as high as $5,000,000 due to the maximum statutory award of $1,000,000 for each willfully infringed trademark.

The five trademarks infringed by S&M are of considerable worth and value. Lorillard has taken considerable action to cultivate, maintain and strengthen these trademarks including: (1) registering the trademarks with the United States Patent and Trademark Office, (Uncontested Facts at ¶ 8); (2) manufacturing the Newport product through strict quality control standards, (Id. at ¶ 5);

---

[2] A figure of $50,000 per infringed mark for a total award of $250,000 is within the range of statutory awards made by other courts under 15 U.S.C. § 1117(c). See Philip Morris USA, Inc. v. Felizardo, No. 03 Civ. 5891, 2004 WL 1375277, at *7 n.16 (S.D.N.Y. June 18, 2004) ($62,500 statutory damage award for two infringed trademarks when defendant attempted to sell 7500 counterfeit cartons of cigarettes); Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003) ($2,000,000 statutory damage award for two infringed trademarks when defendant imported 8,000,000 counterfeit cigarettes); see e.g., Silhouette Int'l Schmied v. Chakhbazian, No. 04 Civ. 3613, at *2 (S.D.N.Y Oct. 4, 2004) ($250,000 statutory damage award for infringement of multiple eyewear trademarks); Microsoft Corp v. V3 Solutions, Inc., No. 01 C 4693, 2003 WL 22038593, at *16 (N.D. Ill. Aug. 28, 2003) ($35,000 statutory damage award for seven infringed Microsoft software trademarks); Microsoft Corp. v. Logical Choice Computers, Inc., No. 99 C 1300, 2001 WL 58950, at *11 (N.D. Ill. Jan. 22, 2001) ($1,400,000 statutory damage for the infringement of seven Microsoft software trademarks).

(3) investing substantial time, energy and money in advertising and promoting the Newport product (Id. at ¶ 6); (4) training its sales personnel to be aware of counterfeit products so, like in this case, they can identify and report suspicious items, (Trial Tr. at pg 33.); and, (5) protecting the value of its trademarks by litigating against trademark infringers.

Congress has provided the option of statutory damages under 15 U.S.C. § 1117(c) and Lorillard has elected to pursue that remedy. Consequently, the significant value of Lorillard's brand and the efforts taken to protect, promote and enhance that brand should be considered by the court in the determination of the appropriate dollar figure for the award. Furthermore, the actual damages incurred by Lorillard are of lesser concern in determining a proper damage award because Congress' decision to allow statutory damages under 15 U.S.C. § 1117(c) was in direct recognition of the fact that the calculation of the actual damages may be difficult, if not impossible, to determine. Louis Vuitton v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (citing S. Rep. No. 177, 104 Cong. (1995)).

The actual damages figure is also less relevant since part of the purpose of statutory damages is to deter the current violator and other potential future violators. Thus, the court believes that a damage award limited to Lorillard's lost profits would have little to no deterrent effect on future violations. A counterfeiter must fear more than just having to turn over his ill gotten gains to the rightful owners. Instead, the counterfeit must understand that he risks his financial future by engaging in his illegal practice. As the Seventh Circuit has held, "one who undertakes a course of infringing conduct may neither sneer in the face of the [trademark] owner nor hide its head in the sand like an ostrich." Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 514 (7th Cir. 1994) (citations omitted).

Furthermore, deterring S&M along with potential future trademark infringers is an important consideration in light of the fact that counterfeiters often times produces lower quality products than the original. Lorillard properly notes that infringement deprives the rightful owner of profits and reduces the value of its brands. But an additional concern, above and beyond the financial harm, is that counterfeit consumer products can also potentially pose the risk of being more harmful or dangerous then the real product. The House of Representatives in its report on the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1368, noted, "even more grievous than the enormous economic losses suffered by American companies are the serious health and safety hazards caused by criminal counterfeiting." H. Rep. No. 556, 104 Cong. (1996).

The court is not entering into a discussion of the general health effects of cigarettes or whether the counterfeit cigarettes sold by S&M were more harmful than the authentic Newport product. Instead, the court is noting that there was no proof presented by the parties that the counterfeit Newport products are subject to any type of safety review or quality control process when manufactured by someone other than Lorillard. Cigarettes are consumer products and the retail establishments that sell cigarettes often sell other consumer products such as food, beverages, over-the-counter medicines and cosmetics. S&M sells food and beverages as well as cigarettes. (Uncontested Facts at ¶ 3.) The statutory damage award will deter S&M and other retail establishments from purchasing counterfeit consumer products, and this in turn will help to reduce the probability that consumers will purchase counterfeit products that may be more dangerous than the authentic items.

The court's belief that a $250,000 award is fully supported by its concurrence with the jury's determination of S&M's willful infringement. A finding of willful infringement allows the court

11

to award the maximum statutory damage amount, if appropriate under the circumstances of the case, of $1,000,000 per infringed mark, 15 U.S.C. § 1117(c), for a total potential award in this case of $5,000,000.

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights. Thus, knowledge need not be proved directly, but can be inferred from a defendant's conduct." Logical Choice Computers, Inc., No. 99 C 1300, 2001 WL 58950, at *11 (citing Wildlife Express Corp., 18 F.3d at 511). Willful infringement may be shown by the fact that the "defendant ignored the plaintiff's notices ..., did not seek advice of an attorney, and passed the matter off as a nuisance." Wildlife Express Corp., 18 F.3d at 511.

Several facts support the jury's determination of willfulness. S&M purchased the counterfeit cigarettes at a price below the market price. Khawam testified that S&M obtained the counterfeit cigarettes at a price of $34 per carton instead of the normal rate of $40 per carton. (Trial Tr. 155, 161.) Khawam admitted during his testimony that price was low enough to make him inspect the tax stamps and the name brands on a sample of the cartons he purchased for Cam-Kat. (Trial Tr. 160.)

Additionally evidence is that packaging for the counterfeit cigarettes, including the outer boxes, was different from the packaging used for authentic Newport cigarettes. (Trial Ex. 30 - 32c.) Alkawham, when questioned about the differences in the packaging during his testimony, responded, "it's not my business to find out if they're counterfeit or not." (Trial Tr. 91.)

In light of the reasons set forth above, this court awards to Lorillard, pursuant to 15 U.S.C. § 1117(c), statutory damages of Fifty Thousand Dollars ($50,000) per infringed mark for a total

12

statutory damage award of Two Hundred Fifty Thousand Dollars ($250,000). This amount is within the range authorized by Congress under the statute and is appropriate in light of the evidence presented at trial.

### C. Award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b) and Rule 54(d)(1)

Lorillard seeks an award of $140,000 for costs and reasonable attorneys' fees. As the prevailing party, Lorillard is entitled to its costs other than attorneys' fees as a matter of course pursuant to Rule 54(d)(1). Fed. R. Civ. P. 54(d)(1). "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Exceptional cases allowing for an award of attorneys' fees include "acts of infringement [that] are 'malicious, fraudulent, deliberate or willful.'" BASF Corp. v. Old World Trading Co., Inc., 41 F.3d 1081, 1099 (7th Cir. 1994) (quoting Roulo v. Russ Berrie & Co., Inc., 886 F.2d 931, 942 (7th Cir. 1989)).

An award of reasonable attorneys's fees under 15 U.S.C. § 1117(a) is appropriate in light of the jury's determination, and the court's concurrence in that determination, of willful infringement by S&M. The parties must comply with the Local Rule 54.3, before the court can determine the amount of fees and costs which reasonably should be awarded.

### D. Permanent Injunction Barring S&M from Selling, Offering for Sale or Distributing Counterfeit Cigarettes

Lorillard seeks a permanent injunction to bar S&M from selling, offering for sale or distributing counterfeit cigarettes. This court has power to enter such an injunction, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). This court grants the injunction, as detailed below, in the "Conclusion" section

of this opinion.

### E. Lorillard's Motion to Amend the Pleadings to Conform to the Evidence Presented at Trial

Lorillard moves to amend the pleadings to add Safwan Alkhawan, ("Alkhawam"), and Marwan Khawam ("Khawam") as individually liable defendants in order to conform the pleadings to the evidence presented at trial pursuant to Rule 15(b). Alkhawan is the owner of S&M. (Trial at pg. 58.) Alkhawan handles S&M's financial activities including its bank accounts, the paying of bills and the writing of checks. (Trial Tr. pg 60.) Alkhawan has employed his brother Khawam to run the gas station on a daily basis for the past ten years. (Id.)

As a general rule, corporate officers cannot be held personally liable for infringing actions taken by the corporation. Drink Group, Inc. v. Gulfstream Communications, 7 F. Supp. 2d 1009, 1010 (N.D. Ill. 1998) (citing Dangler v. Imperial Mach. Co., 11 F.2d 945, 947 (7th Cir. 1926)). However, this court has recognized that an individual may be held liable for a corporation's infringement under the theory of vicarious liability or contributory liability. Microsoft Corp. v. V3 Solutions, Inc., No. 01 C 4693, 2003 WL 22038593, at *13 (N.D. Ill. Aug. 28, 2003) (citing Gershwin Publ'g Corp. v. Columbia Artists Mgmt., 443 F.2d 1159 (2d Cir. 1971)). "Personal liability for trademark infringement ... is established if a corporate officer is a moving, active, conscious force behind the defendant corporation's infringement." Dynamic Force v. Dynamic Force, Ltd., No. 98 C 5922, 1999 WL 342407, at *4 (N.D. Ill. May 14, 1999).

The factual situation in the present case is different from the situation in the V3 Solutions and Dynamic Force cases. In those cases, the individual corporate officer had been named as a defendant in the original complaint filed with the court. Thus, the question was whether it was appropriate to find personal liability or only limit liability to the named corporation. However, in

the present case, Alkhawan and Khawam have never been named as defendants in the case. Service of process was only effectuated on S&M, not on Alkhawan or Khawam. (Dkt. No. 14.) The U.S. Marshall's served Khawam in person on July 18, 2003, however, Khawam was served in his role as an employee of S&M and not in his capacity as an individual. (Dkt. No. 13.)

This court does have the ability under Rule 15 to add new defendants after trial and judgment has been entered. However, as the Supreme Court held in Nelson v. Adams, that if the court adds a new party to the litigation, due process requires that the new party is given an opportunity to respond and contest his personal liability. 529 U.S. 460, 463 (2000). Thus, this court, although it has the power to add Alkhawan and Khawam, cannot immediately award judgment against them in favor of Lorillard. Instead, if this court decides to add Alkhawan and Khawam, it must give them the opportunity to respond.

Furthermore, although Rule 15 provides a liberal policy for amending pleadings, the right to amend is not absolute. See Crestview Vill. Apartments v. United States Dep't of Hous. and Urban Dev., 383 F.3d 552, –, No. 03-3063, 2004 WL 1965663, at *5 (7th Cir. Sept. 2, 2004) (citing Perkins v. Silverstein, 939 F.2d 463, 471-72 (7th Cir. 1991)). Lorillard provides no reason for its failure to name Alkhawan and Khawam as individual defendants before the trial. Lorillard was aware of Alkhawan and Khawam existence and their roles in the counterfeiting before the trial. Alkhawan was present for this trial, however, his presence was in his capacity as the owner of S&M. Whether he and Khawam would have dealt with this case in the same way as S&M, if they were facing personal liability and a possible judgment against them as individuals, is a matter of speculation. The only way to know would be to retry the case and the court is unwilling at this point to impose to undertake that burden especially when Lorillard could have named Alkhawan and Khawam as

defendants much earlier in the litigation. Consequently, the court denies Lorillard's motion to amend the pleadings to conform to the evidence presented at trial.

## CONCLUSION

For the reasons set forth above, this court order judgment to Plaintiff Lorillard Tobacco Company of statutory damages of Fifty Thousand Dollars ($50,000) per infringed mark for a total statutory damage award, pursuant to 15 U.S.C. § 1117(c), of Two Hundred and Fifty Thousand Dollars ($250,000) from Defendant S&M Central Service Corporation. This court also finds that Lorillard Tobacco Company is entitled to receive reasonable costs and attorneys' fees from S&M Central Service Corporation, pursuant to 15 U.S.C. § 1117(b), but the parties must comply with the requirements of Local Rule 54.3 as follows: Lorillard must provide S&M with its 54.3 material by November 12, 2004 and S&M must provide Lorillard with its 54.3 material by November 23, 2004. The parties should then attempt to resolve any remaining disputes over attorneys' fees and costs. If an agreement cannot be reached, Lorillard's further petition for fees and costs, including the joint statement under 54.3(e), is due no later than December 6, 2004. Response is due December 17, 2004 and the reply is December 28, 2004.

This court denies Lorillard's Motion to Amend the Pleadings to Conform to the Evidence and denies Lorillard's August 16, 2004 Motion to Strike S&M's Brief on Damages.

The court orders the clerk of this court to release the five hundred dollar ($500) bond posted by Lorillard Tobacco Company at the commencement of this action on July 18, 2003, plus interest, be immediately released to Martin Kedziora or Thomas Kost in a check payable to Greenberg Traurig, LLP.

Furthermore, it is therefore ordered that defendant S&M Central Service Corporation, and

16

their agents, servants, employees, attorneys, and those personal or entities in active concert or participating with them who receive actual notice of this order by personal service or otherwise, are permanently enjoined from doing, or assisting others in doing, the following acts:

(i) using any reproduction, counterfeit, copy, or colorable imitation of the Lorillard Marks in connection with the importation, sale, offering for sale, or distribution of cigarettes in the United States, which cigarettes in fact are not connected with Lorillard or are not genuine Lorillard products, which such use is likely to cause confusion, or to cause mistake, or to deceive;

(ii) using the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same in any manner likely to cause others to believe that Defendants' products are connected with Lorillard or are genuine Lorillard products if they are not, which such use is likely to cause confusion, or to cause mistake, or to deceive;

(iii) passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Lorillard merchandise as and for genuine Lorillard merchandise;

(iv) committing any other acts reasonably calculated to cause purchasers to believe that Defendant's products are Lorillard's products, when in fact such products are not Lorillard products;

(v) importing, shipping, delivering, distributing, holding for sale, returning, transferring, or otherwise moving or disposing of in any manner such cigarettes falsely bearing one or more of the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same;

(vi) discussing or communicating any aspect of the seizure of counterfeit cigarettes or the identifying markers of counterfeit cigarettes with any person or entity selling or attempting to sell cigarettes to Defendants;

(vii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above paragraphs (i) through (vi); and (viii) other than by an order of this Court,

    (1) selling, moving, destroying, or otherwise disposing of any goods, boxes, labels, packaging or other items or documents bearing any reproduction, counterfeit, or imitation of the Lorillard Marks, which such use is likely to cause confusion, or to cause mistake, or to deceive;

    (2) moving, destroying, or otherwise disposing of any business records or documents relating in any way to the manufacture, importation, acquisition, purchase, distribution, or sale of goods or merchandise bearing any of the Lorillard Marks or any reproduction, counterfeit, or imitation of the Lorillard Marks, which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    (3) assisting any third party in identifying, moving, destroying, or otherwise disposing of any reproduction, counterfeit or imitation goods, as well as any records pertaining to reproduction, counterfeit or imitation goods, which such use is likely to cause confusion, or to cause mistake, or to deceive.

S&M Central Service Corporation and their agents, servants, employees, attorneys, and those personal or entities in active concert or participating with them who receive actual notice of this order by personal service or otherwise is warned that any act by them in

violation of any of the terms of this Order may be considered and prosecuted as contempt of this Court.

ENTER:

/s/ James F. Holderman
JAMES F. HOLDERMAN
United States District Judge

DATE: November 5, 2004